BARON GEVERS AND WIFE *vs.* WRIGHT'S EXECUTORS and others.

1. If, in a marriage settlement, the intended wife conveys all her property which she now has, or may hereafter acquire, to trustees, this will not of itself, at law, convey her after acquired property. It will be treated in equity as an agreement to convey, and enforced as such, if necessary to carry out the objects declared in the marriage settlement.

2. A provision for children in a voluntary settlement, made after marriage, is not a sufficient meritorious consideration to compel performance by the party himself making the settlement, but is, as against his representative. In an antenuptial settlement, made in consideration of marriage, a provision for children is upon meritorious consideration, and will be enforced.

3. An antenuptial settlement, which, upon its face and by its recitals, was intended to secure to the wife the absolute control over all her own property, including what might come to her after marriage, and which gave to her absolute power of disposition, either to her children or strangers, and gave the property to the children of the marriage, only on failure of disposition by her, will not be enforced in favor of the children by construing words of grant into a covenant to convey, and enforcing the conveyance. Such construction will only be made to fulfill the intention of the parties.

* Decree affirmed, 6 *C. E. Gr.* 361.

*Mr. C. Parker*, for complainants.

*Mr. Bradley*, for defendants.

THE CHANCELLOR.

On the fifteenth day of November, 1855, the complainant Baron John Cornelius Gevers, was married to the complainant, Catharine Maria Gevers, then Catharine Maria Wright, at Newark, where her father, the Hon. William Wright, resided. On the day preceding the marriage, a marriage settlement under seal, was executed between Catharine Maria Wright, of the first part; Frederick J. Peet and Edward H. Wright, trustees, of the second part; and the Baron Gevers, of the third part. This recited the intended marriage, and that it had been agreed, that whatever property the said Catharine Maria then had, or thereafter might become entitled to, should be conveyed to trustees, and thereby secured to her separate use, beyond the control of the party of the third part, and not be subject to his debts. And in consideration thereof, and of one dollar, she, the said Catharine Maria, thereby assigned and conveyed to the said trustees, and the survivor of them, all the property, real and personal, which she then had, or might thereafter, during coverture, acquire or become entitled to, in trust, to hold the same until the marriage, for her use; after the marriage, during coverture, to pay the income to her for her separate use, upon her separate receipt, as if *sole;* and if she survived her husband, upon his death, to re-convey the same to her. But if her husband should survive her, then in trust for such persons as she might, by writing in the nature of a will, appoint, and if she should die without such appointment, then in trust for the issue of the marriage; and if she should die without appointment or issue, her husband surviving her, then in trust to pay to him the income of one half of said property, and to pay and distribute the other half, and also at the death of her husband the half so reserved, to her heirs and next of kin, as if she had remained *sole.* The Baron Gevers cove-

nanted with the trustees that he would permit her to make her will; that he would not interfere with the trust property, and would do all acts proper or necessary to vest such property in the trustees. It was provided that the principal should not be changed or re-invested, without the written consent of Mrs. Gevers; that the principal should not be diminished by payment or appropriation; and that the income should not be disposed of by anticipation.

This instrument was left with the father of Mrs. Gevers until his death. She had not, at the time of the execution of the agreement, or of the marriage, any estate or property, nor did she become entitled to any until the death of her father, which occurred on the fourth day of November, 1866. He left a will, by which, after several special legacies, he gave the residue and bulk of his estate, which was large, to his wife and his two children, the complainant, Catharine Maria Gevers, and the defendant, Edward H. Wright, equally to be divided between them. And he directed that the portion given to his daughter should be for her sole and separate use, free from the control, debts, or obligations of her present or any future husband, with power to her to dispose of the same by deed, will, or otherwise, as she should think proper, and her sole receipt to be in all cases sufficient. Of this will he appointed his wife, Minerva Wright, his son, Edward H. Wright, and Joseph P. Bradley, esquire, executors.

An instrument revoking the marriage settlement was drawn, dated February first, 1867, and was duly executed by the complainants, but was not executed by the trustee, E. H. Wright, who is named therein as a party to it.

Upon application of the complainant, Mrs. Gevers, to pay over to her the share of her father's estate given to her by his will, the executors declined to do this, on the ground that, by the marriage settlement, the trustees are entitled to receive it, and hold it for the purposes of that settlement. And thereupon the complainants, the Baron Gevers and Mrs. Gevers, have filed their bill against the executors, and Edward H. Wright, as surviving trustee, the other trustee having

died, and against William A. S. Gevers and Catharine Maria Gevers, two infant children of the marriage; and pray that it may be decreed that the share of the estate of William Wright, given in his will to the complainant, Mrs. Gevers, vested in her directly by the effect of the will for her sole and separate use; that the marriage settlement has not, and cannot have any effect upon the property given to her by the will; and that the executors shall account to her for it, and pay it over to her upon her separate receipt; and in case it is not so decreed, that a new trustee may be appointed in the place of the deceased trustee, to act as co-trustee with Edward H. Wright.

The complainant, Baron Gevers, is a subject of the King of the Netherlands, whom he represents as Minister Plenipotentiary to the Emperor of Russia, at St. Petersburgh, where the complainants reside.

The defendants have all answered, admitting the facts and submitting to the judgment of the court. The estate is large, exceeding a million of dollars; and the trustee and executors, while they do not desire to interpose any obstacle to the relief sought by the complainants if it may be lawfully had, have very properly presented the case to the court fully and fairly, that its direction may be given according to the settled principles of equity.

It is clear that the deed of settlement did not convey the property in question. It could not, for the complainant herself had then no rights or property to convey. And the deed being, as to her, without covenants of any kind, it could not convey at law by estoppel.

But courts of equity will give effect to instruments by which property to be acquired at a future time is conveyed, or agreed to be conveyed. The instrument will be considered as an agreement to convey, and courts of equity, by virtue of the power of enforcing the actual performance of contracts, will compel the conveyance, or consider it as executed. This is well settled by many authorities. *Beckley* v. *Newland*, 2 *P. W.* 182; *Hobson* v. *Trevor*, *Ibid.* 191; *Curtis* v. *Auber*,

*Jac. & W.* 506 ; *Langton* v. *Horton,* 1 *Hare* 549 ; *Douglass* v. *Russell,* 4 *Sim.* 524; *S. C., on appeal,* 1 *Mylne & K.* 488 ; *Mitchell* v. *Winslow,* 2 *Story's R.* 630 ; *Smithurst* v. *Edmunds,* 1 *McCarter* 408 ; 2 *Story's Eq. Jur.,* § 1040.

But courts of equity will not aid and give validity to contracts or instruments which are of no effect at law, in favor of volunteers, but only when the contract or right sought to be enforced or established, is founded on a valuable or meritorious consideration. 2 *Story's Eq. Jur.,* §§ 987, 1040 c, 1040 d ; *Atherley on Marriage Settlements* 145 ; *Vernon* v. *Vernon,* 2 *P. W.* 594 ; *Coleman* v. *Sarel,* 3 *Bro. Ch. Cas.* 12 ; *Meek* v. *Kettlewell,* 1 *Phil.* 347.

Marriage. is a valuable consideration ; and a contract to make a settlement of property to be acquired, made before marriage, in consideration of it, will be enforced in equity. And in this case, if the application was by the trustees to compel Baron Gevers to execute conveyances of after acquired property to them for the purposes of the settlement, the court would give relief.

Whether the making a provision for a wife or child, on account of the duty of a husband or father to provide for wife and children, is such a meritorious consideration as contradistinguished from a valuable one, as will entitle to relief in equity to enforce a contract or settlement not valid at law, is a point upon which the courts have differed.

In *Ellis* v. *Nimmo, Lloyd & Gould* 333, decided by Sir Edward Sugden, while Chancellor of Ireland, it was held a sufficient consideration. Sir L. Shadwell, V. C., in *Holloway* v. *Headington,* 8 *Sim.* 324, held that it was not sufficient ; and said that the ruling of Sir Edward Sugden had been overruled by his successor.

Lord Cottenham, in *Jefferys* v. *Jefferys,* 1 *Craig & P.* 138, held that it was not a sufficient consideration to uphold a voluntary settlement upon daughters. The English editors, in their notes to *Ellison* v. *Ellison,* 1 *White & Tudor's Lead. Cas.* 230, come to the conclusion that it is not a sufficient consideration. The American editors come to the contrary con-

clusion. *Atherley,* in his treatise on *Marriage Settlements,* *p.* 131 to 148, shows that there is doubt upon the question, but comes to the conclusion that the provision for a wife or child is not a sufficient meritorious consideration to enforce a marriage settlement as against the settler himself, but is sufficient as against his heir or devisee.

In the case under consideration, the only rights to be considered are those of the issue of the marriage. The parties to the contract are the complainants and the trustees; the complainants waive their rights under it; the trustee, then, here represents only the issue, actual and prospective. And if this issue have rights under the contract that this court would enforce upon a bill filed by the trustee, the relief prayed for must be refused. The children themselves are mere volunteers, in whose favor no contract would be enforced, if making provision for a child is not a meritorious consideration, except an antenuptial marriage contract.

But if this was an actual contract by Mrs. Gevers with her husband, binding her to convey her future acquisitions to trustees for the use of the children of the marriage, then the children would be within the consideration of marriage, and the contract would be enforced for the benefit of the issue. And the real question in the case is, whether this instrument is to be treated as a contract by Mrs. Gevers to convey such property for the benefit of the issue of the marriage. The instrument does not, at law, convey her after acquired property, and it does not in fact agree to convey it. If it is not in fact such contract, it may be considered and treated as such in equity, if necessary to carry out the intent of the parties. But if no such contract was made by the parties, equity will not make it for them, unless for the purpose of carrying out their plain intent.

Now, the intention of this instrument was not to provide for the issue of the marriage, but to retain to Mrs. Gevers the complete control of her own property, present and future, free from the marital rights of her husband, and to enable her to dispose of it by will. The provisions of the contract

clearly show that such was the intent; it secures no part of it to the issue, but gives her full power to bequeath to her husband or to a stranger; and besides, in the recital, it is expressly declared that the object of the agreement was to secure such control to her. Her husband is expressly bound to join in conveyances; he made a contract that can be enforced. If the instrument had intended to bind her to convey her after acquired property, whether she wanted to do it or not, it would have contained the same obligation on her part; this covenant on his part, would have suggested it. From the situation of the parties, the objects and provisions of the instrument, it is clear that it was intended only for the protection of Mrs. Gevers, and not to compel her to part with the control of property she might afterwards become entitled to, unless she judged it proper so to do.

I know of no case in which it has been held that a settlement by which the wife attempted to convey her property to be acquired, was a contract to convey such property to trustees for the purposes of the settlement. Such an implication is without authority.

The portion of Mrs. Gevers, given to her by the will of her father, is given to her sole and separate use, with full power of disposition. Her father, in whose custody the settlement remained and who must be supposed to have known its contents, chose to give her the control of her property, by the provisions inserted in his will, and not by devising it to the trustees in the marriage settlement, to be held under that. His intention will not be frustrated.

By a series of decisions in the Court of Chancery in England, it has been held that even where an antenuptial marriage settlement bound the husband, by express covenants, to convey to the trustees for the use of the settlement, and in trust for issue within the consideration of marriage, that he was not bound to convey property given after marriage, to his wife, to her own separate use; but he could hold such property by his marital right. *Douglas* v. *Congreve*, 1 *Keen*

410; *Travers* v. *Travers*, 2 *Beav.* 179; *Drury* v. *Scott*, 4 *Young & Coll. Ex. R.* 264.

If these cases are considered as of authority here, the principle established by them would lead to the same conclusion.

I am of opinion that the marriage settlement is not a contract on the part of Mrs. Gevers to convey the property to which she has become entitled after her marriage, to the trustees for the uses of the settlement; but that she is at perfect liberty to receive it herself, and retain it under her own control, or to transfer it to the trustees to be held for the uses of the settlement; and that the executors of William Wright are bound to account to her for her share of his estate, and to pay it over to her on her own separate receipt.

The marriage settlement is not and cannot be revoked by the parties to it. Mrs. Gevers has not the capacity to revoke it. It must be kept alive, that she may, if she elects so to do, transfer any part of her property to the trustee to hold subject to its trusts. Therefore, in this suit, a new trustee may be appointed if she desires it.